BELFAST *vs.* BATH.

Sagadahoc.      Opinion, September 17, 1940.

*Clyde Chapman*, for plaintiff.
*Edward W. Bridgham,*
*John P. Carey*, for defendant.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

MANSER, J. This is an action for pauper supplies. The validity of the writ was attacked by a motion to dismiss. The motion was overruled, and the case comes forward on exceptions. It appears from the record that a Superior Court writ, in the form established by Laws of Maine, 1821, Chapter 63 and still existent, was issued in blank to counsel for the plaintiff. The writ was signed and sealed by the clerk of courts of Waldo County. A declaration, properly setting forth the cause of action, was then attached. The writ was dated and made returnable to the succeeding term of the Superior Court to be held in Sagadahoc County. There is no question as to the regularity of the procedure thus far outlined.

The basis of the motion to dismiss was that the writ as issued from the clerk's office bore the printed caption "State of Maine, Waldo, ss." The name of the county "Waldo" was then stricken out and the name of the county "Sagadahoc" inserted in its place. Contention is that the writ so changed was then ostensibly signed by the clerk of Sagadahoc County when in fact it was signed by the clerk of Waldo County.

Writs are the ordinary instrumentalities to initiate the procedure in civil cases. Originally, the Supreme Judicial Court included among its functions the trial and disposition of civil and criminal cases at *nisi prius* terms. The statutory provision which applied to the issuance of writs in that court is found in R. S. 1916, Chap. 86, Sec. 2, as follows:

> "All civil actions, except *scire facias* and other special writs, shall be commenced by original writs; which, in the supreme judicial court, may be issued by the clerk in term time or vacation. . . . A writ issued by the clerk of any county, may be made returnable in any other county in which the action might be legally brought."

In the revision of 1930, the legislature, giving recognition to the fact that jurisdiction of the trial of civil cases had been transferred from the Supreme Judicial Court to the Superior Court, eliminated the words "supreme judicial" and inserted in place thereof the word "superior" in all instances throughout the entire Revised Statutes which had to do with Trial Court procedure. Thus we find that R. S. 1916, Chap. 86, Sec. 2, noted above, becomes R. S. 1930,

Chap. 95, Sec. 2, and reads exactly the same except for such substitution.

The authority to issue writs from the clerk's office of the Supreme Judicial Court, returnable in any other county in which the action might be legally brought, originated in 1864. See P. L. 1864, Chap. 224. This authority, thus granted, continued without change through the revisions of 1871, 1883, 1903 and 1916 and, as before stated, appears in R. S. 1930, Chap. 95, Sec. 2, with the substitution noted.

In the formation and development of the Superior Court system by successive statutory enactments, single and separate county courts were first created designated as Superior Courts until, in 1919, there were four in number. They were organized to relieve the Supreme Judicial Court of a portion of its *nisi prius* work in their individual counties, and each was limited in jurisdiction to its own county. The statute read as follows:

> "Each justice of a superior court shall establish a seal for his said court; all writs and processes issuing from any superior court shall be in the name of the state, of the usual forms, bearing the teste of the justice thereof under the seal of said court; they shall be signed by its clerk and obeyed and executed throughout the state, and may be made returnable in the superior court of any other county in which the action might be legally brought." R. S. 1916, Chap. 82, Sec. 88.

Then came the enactment of P. L. 1929, Chap. 141, which created the state-wide jurisdiction of the Superior Court, relieved the Supreme Judicial Court entirely from the work of *nisi prius* terms and transferred those functions to the Superior Court. The comparable provision of the statute, above quoted, now appears in R. S. 1930, Chap. 91, Sec. 19, as follows:

> "The justices of the superior court shall establish a seal for said court and all writs and processes therefrom shall be in the name of the state, in the usual form, bearing the teste of any justice of said court, under the seal of said court; they shall be signed by any one of its clerks and obeyed and executed throughout the state, and may be made returnable in the su-

perior court in any other county in which the action might be legally brought."

It is claimed that the legislative intent, disclosed by the above provision, was to enlarge and extend the authority of a clerk of the Superior Court so that he may sign writs which purportedly issue from a county other than his own.

The clerk of courts is an officer elected by the voters of a county. He serves as clerk for the Supreme Judicial and Superior Courts and the Board of County Commissioners in connection with their work and jurisdiction in such county. He is essentially a county officer. While the legislature might conceivably clothe him with authority in connection with a court of state-wide jurisdiction, outside of his own county, yet such intent is not implicit in the language employed in the statute under consideration. It would be inconsistent with the provision of R. S. 1930, Chap. 95, Sec. 2. Inconsistency is not to be presumed because of somewhat loose or ambiguous phraseology, but must be clearly and definitely shown.

In discussing the interpretation of statutes, the court in *Smith* v. *Chase*, 71 Me., 164, said:

"Such a construction must prevail as will form a consistent and harmonious whole, instead of an incongruous, arbitrary and exceptional conglomeration. The context, and the course of legislation, as matter of history often throw light upon the meaning and application of terms used in the statutes."

And, again, in *Rackliff* v. *Greenbush*, 93 Me., 99 at 104, 44 A., 375, 376:

"A statute must be construed as a whole, and the construction ought to be such as may best answer the intention of the legislature. Such intention is to be sought by an examination and consideration of all its parts, and not from any particular word or phrase that may be contained in it. This is the guiding star in the construction of any statute."

It must be kept in mind that R. S., Chap. 95, Sec. 2, provides that:

"A writ issued by the clerk of any county may be made returnable in any other county in which the action might be legally brought."

and that R. S., Chap. 91, Sec. 19, though providing that "all writs and processes ... shall be signed by any one of its clerks" still retains the further provision identical in effect that they "may be made returnable in the superior court in any other county in which the action might be legally brought."

If by reason of a vacancy in the office of clerk of courts in any county a writ cannot be issued from the court in that county, ample opportunity is afforded to procure writs issued by the clerk in any one of the other fifteen counties, and they may be made returnable in the county where the action is to be entered. We hold, therefore, that a writ entered in court must show on its face one of two things: that it was issued by the clerk of courts for the county where it is entered; or that it was issued by the clerk of courts for another county and made returnable where entered. In the record appears the stipulation that if the exceptions are sustained the case shall be dismissed.

The entry will be
*Exceptions sustained.*
*Case remanded for dismissal in*
*accordance with stipulations.*

(BARNES, C. J., having retired, did not join in this opinion.)